There is no force in the objection that a formal promise by the defendant to pay the amount alleged to be due from him for tolls, is not stated in the complaint. In pleading under the Code, it is sufficient to state the facts from which the law infers a liability, or implies a promise. If the defendant is legally liable for these tolls on account of having used the road, an action of debt would have lain at common law upon a statement of the facts creating the liability, without the averment of a promise.
The only question of any moment in this case is, whether the remedy given by the statute for enforcing the payment of the toll is not exclusive. The general plankroad act declares that the companies "may demand and receive toll" according to the rates there specified (Laws of 1847, p. 226, § 36); and the thirty-fifth section of the title of the Revised Statutes concerning turnpikes, which is adopted by the plankroad act, provides that the toll-gatherers may detain and prevent from passing through their gates, persons driving carriages subject to toll, until they shall have paid the tolls. (1 R.S., 584; Laws of 1847, p. 231, § 47.) The defendant maintains that this right to prevent the passage of the carriage, by keeping the gate closed, is the only remedy which exists for tolls, and, consequently, that his action will not lie. The principle alluded to, is thus stated by Lord MANSFIELD: "where a statute *Page 554 
creates a new offence by prohibiting or making unlawful anything which was lawful before, and appoints a specific remedy against such new offence (not antecedently unlawful) by a particular sanction and particular method of proceeding, that particular method of proceeding must be pursued and no others." (Rex v.Robinson, 2 Burr., 799.) The same rule is, no doubt, applicable to legal liabilities of a civil nature created by statute, for the recovery of which a special remedy is given. (See cases cited by STRONG, J., in Dudley v. Mayhew, 3 Comst., 9; Almy v.Harris, 5 John., 175.) The principle has primary reference to remedies or processes of a judicial nature; and it does not seem to me that the right to use material restraint to prevent the defendant doing the act which creates the liability, such as closing the gate in this instance, is such a remedy as is contemplated by the rule. But the rule is not applicable for another reason. The plankroad companies are authorized to enter upon, take and hold all such lands as shall be included in the survey of the road (§ 11), and to demand and receive a compensation for its use by individuals passing over it. Now, long before this statute was passed, the common law afforded a remedy by action, for the use of the property of another, and when a public statute had fixed the measure of the compensation, the party was limited in his recovery to that rule. It is only where a new right is given, which the party would not be entitled to but for the statute, that the remedy afforded by the statute is exclusive. This distinction was applied by Lord MANSFIELD, and the Court of King's Bench, in Rex v. Robinson, already mentioned. An order of justices at sessions had, pursuant to an act of Parliament, required the defendant to pay a certain sum per week to the overseer of the poor of the parish for the maintenance of his grandchildren. The statute gave a penalty on the disobedience of such orders, and prescribed a very summary method by distress for recovering it. The defendant was, nevertheless, indicted for a misdemeanor at common law, for not obeying the order; and he insisted in his defence upon the rule referred to. But Lord MANSFIELD said a remedy existed before *Page 555 
the statute; "for disobedience of an order of sessions," he said, "is an offence indictable at common law. Here the relief is to be assessed and directed by order of sessions, and a particular proceeding in a summary way is prescribed by the act as a particular sanction and method of punishment. But it is to be presumed that the legislature then knew and considered that disobedience to an order of sessions was an offence indictable at common law. So that they must have intended that there should be, and there actually are, two remedies in the present case; one to proceed by way of indictment for disobeying the order where the weekly payment is neglected or refused to be made; the other, to distrain for the 20s. penalty after the expiration of the month." In the present case, it is fair to presume that it was within the contemplation of the legislature that the common law furnished an action of debt for these tolls, and that they designed to superadd to that, the right, if they chose to enforce it, of hindering a traveler from pursuing his journey until he should pay the sum which the company was authorized to demand for the use of the road.
The case of Almy v. Harris, just referred to, also proceeded upon the same distinction. The plaintiff was the proprietor of a ferry, granted to him by a Court of Common Pleas, pursuant to a statute, which also prohibited the setting up of a ferry by others without a license, for the transporting of persons or property across a river under a penalty of five dollars. The action was for disturbing the plaintiff in the use of the ferry, and it was held that the plaintiff could not recover because the right was derived wholly from the statute, and the penalty was the only remedy for punishing intruders. The distinction between that case and the present consists in this, that a turnpike or plankroad company are obliged to acquire the possession of land and to prepare it for use as a road, and that the common law annexes to such proprietorship the usual common-law remedies; whereas in the case of a ferry there is no material property possessed by the owner of the franchise, the whole right existing in the authority given by statute. *Page 556 
The precise question now under consideration has been adjudged in favor of the right to maintain the action, in the Supreme Court of New Hampshire. The suit was brought by the one who had rented the tolls at a certain gate from the turnpike company. The defendant had been repeatedly suffered to pass the gate, both parties erroneously supposing that he was exempt from the payment of toll. The act of incorporation, like our turnpike laws, authorized the company to stop and detain passengers until their tolls were paid. It was held that the plaintiff was entitled to recover. The court said that where new remedies were given by the statute to individuals, in order to enable them more effectually or more conveniently and expeditiously to enforce their rights, these provisions being intended for the benefit of the grantees, are, unless expressly excluding other remedies, to be construed favorably, and to be cumulative rather than restrictive.
If I am right in supposing that the plaintiff had two remedies, either of which he might resort to at his election, no prejudice has arisen out of the circumstance that the defendant was allowed to pass the gate without being arrested in his journey for the non-payment of the toll. It only proves that the plaintiff elected to pursue the remedy by action.
I am in favor of affirming the judgment of the Supreme Court.
All the judges concurring,
Judgment affirmed.